IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BRANDYWINE VALLEY PREMIER HOSPITALITY GROUP t/a CONCORDVILLE INN & MENDENALL INN,<br>   *Plaintiff*<br><br>   v.<br><br>FIREMAN'S FUND INSURANCE COMPANY,<br>   *Defendant* | :<br>: CIVIL ACTION<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: No. 22-2221<br>: |

## MEMORANDUM

PRATTER, J.                                  AUGUST 7, 2023

"A chair is still a chair, even when there's no one sitting there."[1] The same can be said for restaurants and hotels—their physical structures remains unchanged even if, for one reason or another, patrons are not permitted inside. That principle lies at the foundation of a substantial body of caselaw in the Third Circuit, in which businesses filed lawsuits against their insurers to enforce coverage for losses sustained as a result of pandemic-related government closure orders.

After sustaining economic losses due to the COVID-19 pandemic, Brandywine Valley Premier Hospitality Group initiated a lawsuit seeking recovery under the business insurance policy it purchased from Fireman's Fund Insurance Company, following which the insurance company moved to dismiss Brandywine's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). The law in the Third Circuit has established that businesses like Brandywine cannot receive coverage for pandemic-related economic losses because they are not caused by "direct physical loss of or damage to" the insured property. Therefore, the Court grants Fireman's Fund

---

[1]  Dionne Warwick, *A House Is Not a Home*, on Make Way for Dionne Warwick (Scepter 1964).

1

Insurance Company's motion and dismisses Brandywine's Amended Complaint with prejudice for the reasons discussed below.

### BACKGROUND

Brandywine Valley Premier Hospitality Group owns inn and restaurant businesses. Brandywine, an unincorporated entity with a principal place of business in Pennsylvania, purchased a commercial property insurance policy (the "Policy") from Fireman's Fund Insurance Company ("FFIC"), an Illinois-based company. The policy insured Brandywine's buildings and business personal property from February 7, 2020 to February 7, 2021. Brandywine did not participate in negotiating or drafting the policy.

The FFIC policy includes a Business Income and Extra Expense Coverage provision that covers losses and expenses incurred "due to the necessary suspension of . . . operations during the period of restoration arising from direct physical loss or damage to property at a location." Ex. A to Mot. to Dismiss ("Policy") § II.A. The policy also provides Civil Authority Coverage for expenses sustained when access to the insured location is impaired due to "direct physical loss or damage to property other than" the insured property. *Id.* § V.E.2(a)(1).

The FFIC policy defines a "covered cause of loss" as a "risk[] of direct physical loss or damage" that is not otherwise excluded or limited. *Id.* § XIV.A.13. A "period of restoration" as defined in the policy "begins immediately after the time of direct physical loss or damage caused by or resulting from a covered cause of loss to property at the location and ends on the earlier of . . . [t]he date when such property at the location should be repaired, rebuilt, or replaced with reasonable speed and like kind and quality; or . . . [t]he date when business is resumed at a new permanent location." *Id.* § XIV.A.50.

The policy additionally has a Communicable Disease Coverage provision, in which FFIC states that it "will pay for a direct physical loss or damage to Property Insured caused by or

resulting from a covered communicable disease event at [an insured] location." *Id.* § V.F.1.a(1).

There is a loss of use exclusion in the Policy, which sets forth that FFIC "will not pay . . . for any loss, damage, or expense caused directly or indirectly by . . . . loss of use, loss of market, loss of occupancy . . . [or] [a]ny other consequential, indirect, or remote loss of any kind." *Id.* § IV.A.1.c. The FFIC policy also limits when a policyholder can take legal action to instances where "[t]here has been full compliance with all of the terms of th[e] Policy" and "[t]he legal action is brought within 2 years after the date upon which the direct physical loss or damage occurred." *Id.* § XIII.M.

In March 2020, local and state authorities ordered that non-essential businesses, like Brandywine's, be closed to curb the spread of COVID-19. The closure of the businesses continued through the pandemic. Brandywine's business operations ceased as a result of these orders, and it sustained a loss of business income and incurred additional expenses in maintaining its business location. Brandywine alleges that there was and continues to be a suspected presence of the virus at its property.

Brandywine submitted a claim under the policy for coverage of economic losses and extra expenses. Around May 6, 2020, FFIC denied the claim. Brandywine filed suit in the Philadelphia Court of Common Pleas, and FFIC subsequently removed the action to this Court, invoking diversity jurisdiction under 28 U.S.C. §§ 1332 and 1441(b). In its Amended Complaint, Brandywine asserts two claims: breach of contract and duty of good faith and fair dealing (Count I) and bad faith violation of 42 Pa. Cons. Stat. § 8371 (Count II).

FFIC then filed a motion to dismiss the Amended Complaint under Federal Rule of Civil Procedure 12(b)(6), to which Brandywine filed a response. The Court heard oral argument on the present motion. Thus, the motion to dismiss is ripe for disposition.

## Legal Standards

### I. Motion to Dismiss

A defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A plaintiff's complaint must set out "a legally cognizable right of action" and "enough facts" to make that cause of action "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). On a motion to dismiss for failure to state a claim, the Court takes all well-pleaded facts as true and draws all inferences in the light most favorable to the plaintiff. *Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010). The Court need not, however, credit "threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements" set forth in the complaint. *James v. City of Wilkes-Barre*, 700 F.3d 675, 681 (3d Cir. 2012). In addition to the complaint, the Court may consider "exhibits attached to the complaint, matters of public record," and "undisputedly authentic documents" upon which the claims rest, *Mayer*, 605 F.3d at 230, and documents "integral" to a complaint, like a contract.[2] *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014).

After separating out well-pleaded factual allegations from legal conclusions, the Court must determine whether "the plaintiff [has pled] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Any "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on [their] face." *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation marks omitted). "Determining whether

---

[2] Although Brandywine did not include the Policy as an exhibit to its Amended Complaint, the Court considers the Policy at length in ruling on FFIC's motion to dismiss because the Policy is indisputably integral to Brandywine's claims.

a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## II. Interpretation of Insurance Policies

When sitting in diversity, courts must apply state substantive law. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).[3] Absent a controlling decision by the Pennsylvania Supreme Court on this issue, this Court must predict what the state court would do if presented with the plaintiff's claims. *Baptiste v. Bethlehem Landfill Co.*, 965 F.3d 214, 225 (3d Cir. 2020); *see also Wilson v. USI Ins. Serv. LLC*, 57 F.4th 131, 138 (3d Cir. 2023).

"Interpretation of an insurance policy, and specifically whether a particular loss triggers coverage, is a question of law." *Whiskey Flats Inc. v. Axis Ins. Co.*, 519 F. Supp. 3d 231, 235 (E.D. Pa. 2021). In interpreting a policy under Pennsylvania law, the Court "ascertain[s] the intent of the parties as manifested by the language of the written instrument." *Am. Auto. Ins. Co. v. Murray*, 658 F.3d 311, 320 (3d Cir. 2011); *see also 401 Fourth St., Inc. v. Invs. Ins. Grp.*, 879 A.2d 166, 171 (Pa. 2005). "The policy must be read as a whole and construed in accordance with the plain meaning of terms." *Am. Auto. Ins.*, 658 F.3d at 320. "Where the language of an insurance policy is clear and unambiguous, a court must enforce that language." *Id.* at 321. A term "is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense." *Hutchison v. Sunbeam Coal Corp.*, 519 A.2d 385, 390 (Pa. 1986). If a term is ambiguous, the Court construes it "in favor of the insured." *401 Fourth St.*, 879 A.2d at 171. Courts determine whether language in policy provisions are ambiguous by considering such language "in the context of the entire policy," *Madison Constr. Co. v. Harleysville Mut. Ins. Co.*, 678 A.2d 802,

---

[3] Because the parties do not dispute that Pennsylvania law applies, the Court does not engage in a choice of law analysis.

5

805 (Pa. Super. Ct. 1996), and, where possible, "interpret the policy so as to avoid ambiguities and give effect to all of its provisions." *Am. Auto. Ins.*, 658 F.3d at 321.

"[A]n insured bears the initial burden to make a prima facie showing that a claim falls within the policy's grant of coverage, but if the insured meets that burden, the insurer then bears the burden of demonstrating that a policy exclusion excuses the insurer from providing coverage if the insurer contends that it does." *State Farm Fire & Cas. Co. v. Est. of Mehlman*, 589 F.3d 105, 111 (3d Cir. 2009). "[E]xclusions are always strictly construed against the insurer and in favor of the insured." *Nationwide Mut. Ins. Co. v. Cosenza*, 258 F.3d 197, 206–07 (3d Cir. 2001). If an exclusion does apply, the burden shifts again to the insured to show an exception to that exclusion. *Wilson*, 57 F.4th at 141.

## DISCUSSION

FFIC moves to dismiss the complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). FFIC makes several arguments regarding why the Court should dismiss Brandywine's amended complaint with prejudice: (1) the breach of contract claim fails without an allegation of direct physical loss or damage to property; (2) the requirements of a "communicable disease event" have not been alleged; (3) even had direct physical loss or damage been alleged, the loss of use exclusion would apply; (4) Brandywine's suit is untimely under the terms of the policy; (5) Brandywine's allegations of breach of good faith and fair dealing and bad faith must be dismissed because coverage does not exist; and (6) further amendment of the amended complaint would be futile. In opposition, Brandywine asserts that (1) the Amended Complaint sufficiently alleges that COVID-19 caused a direct physical loss of use of the property; (2) it has pled facts that plausibly show coverage under the Communicable Disease Coverage in the policy; (3) the loss of use exception is contrary to the reasonable expectations of the insured;

6

(4) Brandywine's suit is timely; (5) the claims of breach of good faith and fair dealing and bad faith have been sufficiently pled; and (6) further amendment would not be futile.

## I. Breach of Contract (Count I)

### A. Brandywine Has Failed to Plausibly Plead Entitlement to Business Income and Extra Expense Coverage or Civil Authority Coverage

As a threshold matter, the Court observes that Brandywine bears the initial burden of establishing its entitlement to coverage under the policy. *See Jugan v. Econ. Premier Assurance Co.*, 728 F. App'x 86, 90 (3d Cir. 2018) ("Pennsylvania law places the initial burden of establishing the existence of insurance coverage on the insured."). FFIC argues that because Brandywine cannot establish that its claim falls within the coverage provided by the policy, its breach of contract claim must be dismissed.

Each coverage provision at issue requires a direct physical loss or damage to property as a triggering element. Both the Business Income and Extra Expense provision and the Communicable Disease Coverage provision demand direct physical loss or damage to the *insured property* and do not apply to economic losses. The Civil Authority provision, on the other hand, requires direct physical loss or damage to property *other* than the insured premises as a qualifying element for coverage.

FFIC argues that Brandywine has failed to allege physical loss or damage to its property, but rather alleges purely economic losses resulting from the government closure orders issued to mitigate the spread of COVID-19. Brandywine counters that the loss of functionality of its property and the loss of revenue and income constitute direct physical losses under the policy.

The Court's initial task is to determine whether the policy's terms are clear and unambiguous. *DiFabio v. Centaur Ins. Co.*, 531 A.2d 1141, 1143 (Pa. Super. Ct. 1987) ("The threshold determination of whether a writing is 'ambiguous' necessarily lies with the court.").

7

Language is not ambiguous merely because parties disagree on the appropriate construction of a given provision. *Neuhard v. Travelers Ins. Co.*, 831 A.2d 602, 605 (Pa. Super. Ct. 2003). And where a policy has failed to define a term, "the Court will read it in the plain and generally accepted meaning of the term," *1 S.A.N.T., Inc. v. Berkshire Hathaway, Inc.*, 513 F. Supp. 3d 623, 629 (W.D. Pa. 2021), informing its understanding of the term by considering the relevant dictionary definitions. *Madison Constr. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 108 (Pa. 1999).

Here, although the policy does not define "direct physical loss or damage to property," the Court cannot find that the term is ambiguous such that it must be construed in Brandywine's favor as the insured. Turning toward the dictionary definitions of the words used in this phrase, "direct" means "marked by absence of an intervening agency, instrumentality, or influence." *Direct*, Merriam-Webster's Unabridged Dictionary (last visited July 28, 2023). "Physical" means "[o]f, relating to, or involving material things; pertaining to real, tangible objects." *Physical*, Black's Law Dictionary (11th ed. 2019); *see also Wilson*, 57 F.4th at 142. "Loss" means "failure to keep possession" and "the state or fact of being destroyed or placed beyond recovery," while "damage" means "injury or harm to person, property, or reputation." *Loss*, Merriam-Webster's Unabridged Dictionary (last visited July28, 2023); *Damage, id.*; *see also Wilson*, 57 F.4th at 141–42. As this Court has previously remarked, "both the words 'direct' and 'physical' modify 'loss of property' and 'damage to property.'" *Frank Van's Auto Tag, LLC v. Selective Ins. Co. of Se.*, 516 F. Supp. 3d 450, 456 (E.D. Pa. 2021).

Looking next to the leading treatise on insurance law, a requirement that damage or loss be "physical" "is widely held to exclude alleged losses that are intangible or incorporeal and, thereby, to preclude any claim against the property insurer when the insured merely suffers a detrimental economic impact *unaccompanied by a distinct, demonstrable, physical alteration of*

*the property.*" 10A Steven Plitt et al., *Couch on Insurance* § 148:46 (3d ed. June 2023) (emphasis added). Courts in the Third Circuit have agreed with that principle, finding that "[t]he words 'direct' and 'physical,' which modify the word 'loss,' ordinarily connote actual, demonstrable harm of some form to the premises itself, rather than forced closure of the premises for reasons extraneous to the premises themselves, or adverse business consequences that flow from such closure." *Hair Studio 1208, LLC v. Hartford Underwriters Ins. Co.*, 539 F. Supp. 3d 409, 417 (E.D. Pa. 2021) (quoting *Crescent Plaza Hotel Owner L.P. v. Zurich Am. Ins. Co.*, 520 F. Supp. 3d 1066, 1068–69 (N.D. Ill. 2021)). There also must be "a *direct nexus* between the alleged loss and the physical conditions of the covered premise." *Frank Van's Auto Tag*, 516 F. Supp. 3d at 457 (emphasis added).

That it is not to say that "sources unnoticeable to the naked eye" could *never* cause physical damage or loss that would trigger coverage of an insurance policy like the one at issue here—but the resulting physical damage "must meet a higher threshold." *Port Auth. of N.Y. & N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226, 235 (3d Cir. 2002). Rather, such particulate sources of damage must "result[] in contamination of the property such that its function is nearly eliminated or destroyed, or the structure is made useless or uninhabitable" before the insured becomes entitled to coverage. *Id.* at 236.[4]

The Third Circuit Court of Appeals, in *Wilson v. USI Insurance Service LLC*, recently placed its imprimatur on this construction of the term "direct physical loss or damage to property."

---

[4] Brandywine's frequent analogizing of coverage due to the direct physical damage or loss of property caused by COVID-19 particles versus the coverage of damage or loss of property due to smoke damage, while creative, is unavailing. That is because, as the Third Circuit Court of Appeals has acknowledged, smoke is but one "typical[] example of physical damage from an outside source that may *demonstrably alter the components of a building* and trigger coverage." *Port Auth.*, 311 F.3d at 235. COVID-19 viral particles, on the other hand, are not similarly capable of demonstrably altering Brandywine's insured properties.

57 F.4th at 142–43. In *Wilson*, the Court of Appeals, citing its earlier ruling in *Port Authority of New York and New Jersey v. Affiliated FM Insurance Company*, held that businesses similarly situated to Brandywine during the pandemic-related government closures "must show that the functionalities of their properties were nearly eliminated or destroyed, that the structures were made useless or uninhabitable, or that there was an imminent risk of either of those things happening" before such businesses can show entitlement to coverage. *Id.* at 142.

Here, Brandywine has not plausibly alleged that COVID-19 caused any impact to the physical structure of its property but, rather, complains merely of diminution of its economic value without a direct nexus to actual physical property damage or loss. *See 1 S.A.N.T.*, 513 F. Supp. 3d at 630. Although physical particles of the COVID-19 virus may have come into contact with Brandywine's insured property, there is no direct causal relationship between that contact and Brandywine's business loss. *KWB Enters., Inc. v. Nationwide Gen. Ins. Co.*, No. 20-cv-5195, 2022 WL 282533, at *3 (E.D. Pa. Jan. 31, 2022). Indeed, Brandywine's economic "loss arises not from the presence or absence of viral particles at any particular location but from the ambient risk that people in society who enter the [premises] may carry the disease" and the state government's response to that ambient risk. *Id.*

Moreover, Brandywine has not met the higher threshold outlined in *Port Authority* to show that the virus, indisputably invisible to the naked eye, made its properties uninhabitable and unusable for *all* purposes—those properties were merely rendered temporarily unsuitable for their ideal pre-pandemic use within the hospitality industry. *Wilson*, 57 F.4th at 142–43, 145 n.8. This Court is bound by the holding of the Third Circuit Court of Appeals that "loss of use of intended purpose under the[se] circumstances . . . is not a physical loss of property within the meaning of

10

the polic[y]." *Id.* at 143. Brandywine therefore has not alleged direct physical loss or damage to its property such that a "covered cause of loss" exists under the policy.[5]

That conclusion necessarily informs the Court's finding as to whether Brandywine was entitled to recover under the Policy's Business Income and Extra Expense Coverage or the Civil Authority Coverage provisions. Because Brandywine has not alleged direct physical loss or damage to its property, it has not adequately alleged its entitlement to the Business Income and Extra Expense Coverage, which would apply for losses and expenses incurred "due to the necessary suspension of [its] operations during the period of restoration arising from direct physical loss or damage to property at a location." Policy § II.A.[6]

---

[5] Brandywine relies on two Pennsylvania state court cases to suggest that the Pennsylvania Supreme Court *could* find that pandemic-related loss of property use could qualify as direct physical loss or damage to property. *See MacMiles, LLC v. Erie Ins. Exch.*, No. GD-20-7753, 2021 WL 3079941 (Pa. C.P. May 25, 2021); *Ungarean v. CNA*, No. GD-20-6544, 2021 WL 1164836 (Pa. C.P. Mar. 25, 2021). However, the Pennsylvania Superior Court reversed the Common Pleas Court's ruling in *MacMiles*. *See MacMiles, LLC v. Erie Ins. Exch.*, 286 A.3d 331, 339 (Pa. Super. Ct. 2022) ("The trial court's reading of the Policy is strained, and we find that we are constrained to reject that holding."). The Superior Court in *Ungarean* came to a different conclusion. *Ungarean v. CNA*, 286 A.3d 353, 385 (Pa. Super. Ct. 2022) (finding that the insurer had failed to show that the policy at issue clearly and unambiguously prevented coverage). "The differing outcomes make these decisions a less useful measure in determining how the Supreme Court of Pennsylvania would decide the issues before [the Court]. . . ." *Wilson*, 57 F. 4th at 144 n.7. Still, the Third Circuit Court of Appeals, whose rulings are binding on this Court, "carefully reviewed the reasoning of both decisions and predict[ed] that the Supreme Court of Pennsylvania, like the overwhelming majority of state and federal jurisdictions that have considered the issue, would determine that the policies here are unambiguous and do not cover the businesses' losses." *Id.* The Supreme Court of Pennsylvania recently granted petitions for allowance of appeal as to both Superior Court cases. *See Ungarean v. CNA*, Nos. 313 & 314 WAL 2022, 2023 WL 4530116, at *1 (Table) (Pa. July 13, 2023); *Macmiles, LLC v. Erie Ins. Exch.*, No. 307 WAL 2022, 2023 WL 4528617, at *1 (Table) (Pa. July 13, 2023).

[6] As FFIC notes in its motion, this conclusion is consonant with other terms in the policy. Specifically, the Business Income and Extra Expense Coverage would cover expenses incurred during a period of restoration, which period would end on the date when the insured property "should be repaired, rebuilt or replaced with reasonable speed," or when the business moved to a permanent new location. Policy §§ II.A, XIV.A.50. But in Brandywine's case, "there is nothing to repair, rebuild or replace," nor is there any indication that the business needed to move locations entirely—"[t]he businesses' loss of use would be—and was—cured by an end to the closure orders, and not by the rebuilding or repairing of any property." *Wilson*, 57 F. 4th at 143. Adopting Brandywine's proposed construction of "direct physical loss or damage" would render the defined term "period of restoration" effectively meaningless. *Id.* at 144.

The policy also provides for Civil Authority Coverage when there has been "direct physical loss or damage to property other than at" the insured location, "caused by or result[ing] from a covered cause of loss" and occurring within a certain number of miles of the insured premises. *Id.* § V.E.2. The Amended Complaint, however, does not allege at all that a civil authority has prohibited access to some area near the insured property. And, as discussed above, even had Brandywine alleged the existence of the COVID-19 virus at another property, it still would not constitute direct physical loss or damage. *See Frank Van's Auto Tag*, 516 F. Supp. 3d at 459 (noting that "fear of the virus in nearby properties d[id] not establish physical damage" entitling the insured to similar civil authority coverage.). Brandywine has therefore failed to allege coverage under the Civil Authority provision.

### B. Brandywine Has Failed to Plausibly Plead Entitlement to Communicable Disease Coverage

Brandywine's Amended Complaint also fails to set forth facts that would entitle it to "Communicable Disease Coverage." That provision of the policy sets forth the following language:

> a. (1) We will pay for direct physical loss or damage to Property Insured caused by or resulting from a covered communicable disease event at a location including the following necessary costs incurred to:
>    (a) Tear out and replace any part of Property Insured in order to gain access to the communicable disease;
>    (b) Repair or rebuild Property Insured which has been damaged or destroyed by the communicable disease; and
>    (c) Mitigate, contain, remediate, treat, clean, detoxify, disinfect, neutralize, cleanup, remove, dispose of, test for, monitor, and assess the effects the communicable disease.
> (2) If the Declarations show a Limit of Insurance for Business Income and Extra Expense Coverage, then we will pay for the actual loss of business income and necessary extra expense you sustain due to [t]he necessary suspension of operations during the period of restoration[.] The suspension must be due to direct physical loss or damage to property at a location caused by or resulting from a covered communicable disease event.

Policy § V.F.1. The policy defines a "communicable disease event" as "an event in which a public health authority has ordered that a location be evacuated, decontaminated, or disinfected due to the outbreak of a communicable disease at such location." *Id.* § XIV.A.11. "Communicable disease means any disease, bacteria, or virus that may be transmitted directly or indirectly from human or animal to a human." *Id.* § XIV.A.10. "Public health authority means the governmental authority having jurisdiction over [the insured's] operations relative to health and hygiene standards necessary for the protection of the public." *Id.* § XIV.A.59.

Amalgamating this language, the Court concludes that to plausibly plead entitlement to Communicable Disease Coverage, Brandywine must allege (1) an evacuation, decontamination, or disinfection of the insured location by a public health authority with appropriate jurisdiction, (2) a conclusion that such evacuation, decontamination, or disinfection of a location was due to an *outbreak* at the location, (3) that the outbreak was of a communicable disease,[7] and (4) that the order of public health authority caused, or resulted in, direct physical loss or damage to the insured property.

The parties differ on how the policy's Communicable Disease Coverage applies to the facts of this case. FFIC argues first that the Communicable Disease provision, like the other coverages at issue here, covers only "direct physical loss or damage" to Brandywine's property, so no coverage is available here. Second, FFIC argues that the Amended Complaint contains no allegations of an outbreak at Brandywine's properties. Brandywine, on the other hand, again argues that the loss of the normal use of its business premises constituted a direct physical loss

---

[7] There is no dispute that COVID-19 qualifies as a "disease, bacteria, or virus that may be transmitted directly or indirectly from human or animal to a human." Policy § XIV.A.10; *see About COVID-19*, Centers for Disease Control and Prevention (July 10, 2023), https://www.cdc.gov/coronavirus/2019-ncov/your-health/about-covid-19.html ("COVID-19 spreads when an infected person breathes out droplets and very small particles that contain the virus. . . . Anyone infected with COVID-19 can spread it, even if they do NOT have symptoms.").

under the policy. Brandywine implicitly argues that an outbreak occurred at its premises because "COVID-19 was present and being transmitted at all businesses and places of human interaction." Pl.'s Resp. to Mot. to Dismiss, at 15. And, according to Brandywine, Governor Wolf's order issued on March 19, 2020 forced Brandywine to evacuate its premises and shut its doors, causing all normal business operations to cease.

First, for the reasons discussed above, Brandywine has not alleged direct physical loss or damage to its insured property. That failure alone precludes a showing of entitlement to the Communicable Disease Coverage.

Second, Brandywine has not alleged that there has been a "communicable disease event" because it has not alleged that a public health authority ordered that its location be evacuated, decontaminated, or disinfected due to the *outbreak* of a communicable disease *at the insured location*. The policy includes no definition of the term "outbreak," so the Court resorts to "the plain and generally accepted meaning of the term" in interpreting the Policy. *1 S.A.N.T.*, 513 F. Supp. 3d at 629. "Outbreak" means "[a] sudden increase in the incidence of a disease; an epidemic of infectious disease, *esp[ecially] when relatively localized.*" *Outbreak*, Oxford English Dictionary (3d ed. 2004) (emphasis added).

Brandywine alleges only that "[g]iven the widespread nature of the virus, and the ability for hosts to remain asymptomatic, [Brandywine] believes that the virus was on site in some form during the shutdown." Am. Compl. ¶ 32. Fairly construing the term outbreak as it is commonly used, this broad allegation—which does not even point to *one* instance of an infected person being present at Brandywine's insured premises—falls far short of plausibly pleading that an outbreak occurred at a Brandywine location. *See BSD-360, LLC v. Phila. Indem. Ins. Co.*, 580 F. Supp. 3d 92, 102–03 (E.D. Pa. 2022) (finding that insurance policy provided no communicable disease

coverage because one parent of a student testing positive for COVID-19 did not qualify as an "outbreak" at a preschool based on the plain, ordinary meaning of the word, and the governor's order closing businesses did not result from an outbreak at the preschool's location).

Thus, the Communicable Disease provision does not cover Brandywine's claim. The provision cannot reasonably be read to protect generally against a global pandemic rather than an outbreak localized particularly to Brandywine's immediate vicinity. *Id.* at 102. Finding that the provisions terms are "clear and unambiguous," this Court will apply the language as written. *Am. Auto. Ins.,* 658 F.3d at 321.

Therefore the Court finds that the Pennsylvania Supreme Court would likely decide that Brandywine cannot recover for its economic losses under the Communicable Disease Coverage provision of the policy at issue.

Because Brandywine has failed to demonstrate coverage under the FFIC policy, the Court need not consider whether the loss of use exclusion bars coverage, *Wilson,* 57 F.4th at 148, nor will it address Brandywine's related counterargument that the loss of use exclusion creates an ambiguity when read in conjunction with the Business Income and Extra Expense Coverage and Communicable Disease Coverage provisions. And because, as explained above, Brandywine fails to allege a direct physical loss or damage, the Court need not reach the question of whether the policy's two-year limitation bars Brandywine's claim.

### C. The Reasonable Expectations of the Insured Doctrine

Brandywine argues that it had a reasonable expectation that its policy would provide coverage for the economic losses it sustained, and its expectations must be given priority.

"Pennsylvania case law . . . dictates that the proper focus for determining issues of insurance coverage is the reasonable expectations of the insured." *Reliance Ins. Co. v. Moessner,* 121 F.3d 895, 903 (3d Cir. 1997). To determine Brandywine's reasonable expectations, the Court

looks to the "totality of the insurance transaction" with FFIC. *St. Paul Mercury Ins. Co. v. Corbett*, 630 A.2d 28, 30 (Pa. Super. Ct. 1993) (en banc). Generally, "an insured may not complain that [its] reasonable expectations were frustrated by policy limitations which are clear and unambiguous." *Id.* Nevertheless, an insured's reasonable expectations *might* prevail over the express terms of an insurance contract under certain circumstances. *See Newchops Rest. Comcast LLC v. Admiral Indem. Co.*, 507 F. Supp. 3d 616, 621 (E.D. Pa. 2020); *Reconstructive Orthopaedic Assocs. II, LLC, v. Zurich Am. Ins. Co.*, No. 21-cv-4003, 2022 WL 4586131, at *2 (E.D. Pa. Sept. 29, 2022). Where "insurance companies abuse their position vis-a-vis their customers" and "create[] in the insured a reasonable expectation of coverage that is not supported by the terms of the policy that expectation will prevail over the language of the policy." *Bensalem Twp. v. Int'l Surplus Lines Ins. Co.*, 38 F.3d 1303, 1311 (3d Cir. 1994). But to rely on the doctrine, the insured must allege some misconduct on the part of the insurer—for example, "actively providing misinformation about the scope of coverage" or "passively failing to notify the insured of changes in the policy." *Id.* at 1312, 1312 n.5 ("In contrast, [certain] cases . . . concern situations where the insured has no reasonable basis for believing that a policy covers events that it does not. That is, the insurer has neither told the insurer that a policy would cover certain events when by its terms it does not, nor made a change in the terms of coverage after the insured has agreed to purchase insurance without informing the insured of the change and its consequences.").

Brandywine argues that it reasonably expected indemnification (1) "given the severe loss of business income it was forced to endure" and (2) the fact that FFIC's withholding of the insurance payment is "contrary to every expectation an insured has ever held and contrary to one-hundred and fifty years of homeowner's insurance policies." Pl.'s Resp. to Mot. to Dismiss at 16–17. These types of vague expectations, unmoored from the actual language of the policy, are

16

insufficient to entitle Brandywine to relief. Brandywine alleges no misconduct on the part of FFIC. And as explained above, the policy's language clearly and unambiguously requires "direct physical damage or loss" as a condition precedent to all of the at-issue coverage provisions, so the Court cannot agree that FFIC gave Brandywine some other assurances that coverage would be available under these circumstances. *See Hirschfield-Louik v. Cincinnati Ins. Co.*, No. 20-cv-816, 2022 WL 14004005, at *16 (W.D. Pa. Oct. 24, 2022). To the extent Brandywine argues that it had a reasonable expectation that its economic losses would be covered merely because the policy it purchased from FFIC was an "all risk" policy, the Court cannot accept such an argument because that stance untethers a party's reasonable expectations from the express terms of the contract. "[I]n the insurance industry, 'all risks' does not mean 'every risk.'" *Port Auth.*, 311 F.3d at 234.

Therefore, Brandywine cannot overcome the motion to dismiss by relying upon the reasonable expectations of the insured doctrine.

As this Court has expressed before, it is sympathetic to the daunting challenges businesses faced during the COVID-19 pandemic. *See, e.g., Frank Van's Auto Tag*, 516 F. Supp. 3d at 458. Nevertheless, the plain language of the insurance policy, and binding precedent from the Third Circuit Court of Appeals, requires a finding that Brandywine's losses are not covered. *See Wilson*, 57 F.4th at 147–48. Therefore, FFIC's motion to dismiss is granted as to Brandywine's breach of contract claim.

## II.  Breach of Duty of Good Faith and Fair Dealing (Count I)

FFIC contends that Brandywine's breach of duty of good faith and fair dealing claim must merge with the breach of contract claim because those claims are based on the same underlying conduct.

"[T]o plead a cause of action for breach of the covenant of good faith, . . . a plaintiff must properly plead the elements of a claim of breach of contract." *CRS Auto Parts, Inc. v. Nat'l Grange*

17

*Mut. Ins. Co.*, 645 F. Supp. 2d 354, 369 (E.D. Pa. 2009). Brandywine may not maintain its claim for breach of a covenant of good faith and fair dealing independently from its breach of contract claim. *Id.*; *see also Tubman v. USAA Cas. Ins. Co.*, 943 F. Supp. 2d 525, 529 (E.D. Pa. 2013) ("[B]ecause the common law [good faith] claim sounds in contract, it cannot be brought independently from a breach of contract claim.").

For the reasons set forth above, Brandywine has failed to plausibly plead its breach of contract claim, and Brandywine's breach of good faith and fair dealing claim cannot survive independently. Thus, the motion to dismiss will be granted as to this claim.

### III. Bad Faith Violation of 42 Pa. Cons. Stat. § 8371 (Count II)

Brandywine also asserts a claim that FFIC violated 42 Pa. Cons. Stat. § 8371, which states:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:
>
> > (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
> > (2) Award punitive damages against the insurer.
> > (3) Assess court costs and attorney fees against the insurer.

*Id.* "[T]o recover under a claim of bad faith, the plaintiff must show that the defendant did not have a reasonable basis for denying benefits under the policy and that defendant knew or recklessly disregarded its lack of reasonable basis in denying the claim." *Terletsky v. Prudential Prop. & Cas. Ins. Co.*, 649 A.2d 680, 688 (Pa. Super. Ct. 1994); *see also W.V. Realty, Inc. v. N. Ins. Co.*, 334 F.3d 306, 312 (3d Cir. 2003). Because "[b]ad faith claims are fact specific and turn on the conduct of the insurer towards the insured[,] . . . [a] plaintiff must plead specific facts as evidence of bad faith and cannot rely on conclusory statements." *Toner v. GEICO Ins. Co.*, 262 F. Supp. 3d 200, 208 (E.D. Pa. 2017). To establish an insurer's bad faith, the insured must allege a

> frivolous or unfounded refusal to pay proceeds of a policy; it is not necessary that such refusal be fraudulent. For purposes of an action against an insurer for failure

18

> to pay a claim, such conduct imports a dishonest purpose and means a breach of a known duty (i.e., good faith and fair dealing), through some motive of self-interest or ill will; mere negligence or bad judgment is not bad faith.

*Romano v. Nationwide Mut. Fire Ins. Co.*, 646 A.2d 1228, 1232 (Pa. Super. Ct. 1994); *accord Jurinko v. Med. Protective Co.*, 305 F. App'x 13, 18–19 (3d Cir. 2008).

FFIC argues that Brandywine's statutory bad faith claim is not viable and must be dismissed because coverage does not exist for the losses claimed, so FFIC had a reasonable basis for its determination. Brandywine counters that the Court should be lenient, because without further discovery and investigation, there is no way for Brandywine to prove that FFIC failed to conduct a good faith investigation into Brandywine's claim.

Although the Amended Complaint is replete with conclusory statements as to FFIC's bad faith in denying the claim for coverage, Brandywine's only factual allegation in the Amended Complaint regarding bad faith is that FFIC failed to provide coverage for a loss without a reasonable basis, specifically under the Communicable Disease and Civil Authority coverages. But "[a]t the pleading stage, a plaintiff [only] states a sufficient claim if the complaint avers basic facts regarding the insurance policy, loss, and denial of the claim, as well as allegations that the insurer acted unreasonably." *Snider for Goldhirsh v. State Farm Fire & Cas. Co.*, No. 21-cv-4224, 2022 WL 17540210, at *3 (E.D. Pa. Dec. 8, 2022).

Here, Brandywine's claim is insufficient under *Terletsky* because it has failed to allege that FFIC acted unreasonably. *See* 649 A.2d at 688. To the contrary, as the Court concluded above, the clear and unambiguous terms of the policy serve as a reasonable basis for FFIC's denial of Brandywine's claim because Brandywine made no claim of direct physical damage or loss to its property. The Court therefore grants FFIC's motion to dismiss as it relates to Brandywine's bad faith claim.

### IV. Leave to Amend

Courts should "freely give leave" to amend pleadings "when justice so requires." Fed. R. Civ. P. 15(a)(2). However, the Court need not grant leave to amend when doing so would be futile. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008). "'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1435 (3d Cir. 1997); *see also Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000).

Here, Brandywine has already amended its complaint once, without alleging any plausible facts to support a finding that there was a direct physical loss or damage to its insured property. Because Brandywine cannot withstand a successive motion to dismiss without asserting such facts, permitting a second amended complaint would be futile. *See 44 Hummelstown Assocs., LLC v. Am. Select Ins. Co.*, 542 F. Supp. 3d 328, 342 (M.D. Pa. 2021) (finding, where plaintiff had already filed an amended complaint, that further amendment would be futile "[g]iven that the clear import of [the] [p]laintiff's non-conclusory allegations is that it seeks to recover for intangible harms unrelated to the physical form of the [c]overed [p]roperty"). The Amended Complaint is therefore dismissed with prejudice.

### CONCLUSION

For these reasons, FFIC's motion to dismiss is granted, and Brandywine's claims against FFIC are dismissed with prejudice. An appropriate order follows.

BY THE COURT:

/s/ Gene E.K. Pratter
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE